UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED
2019 JUL -2 AM 9:05
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIS[TRICT]

UNITED STATES OF AMERICA

v.

KYLE MARCOTTE

Case No.   3:19-cr-113-J-32JBT
Ct. 1:     18 U.S.C. § 1956(h)

## INFORMATION

The United States charges:

### COUNT ONE
### (CONSPIRACY TO COMMIT MONEY LAUNDERING)

At all times material to this Information:

### BACKGROUND

1. The defendant, KYLE MARCOTTE, was a resident of the State of Florida, including Atlantic Beach in the Middle District of Florida.

2. An individual referred to as "Person A" owned and operated a clinical testing laboratory referred to as "Laboratory A," which performed bodily fluid testing.

3. Bodily fluid testing of urine, blood and saliva could be used to detect recent drug or alcohol use by an individual. In particular, urine drug testing (UDT) ranged in complexity from screening tests - also known as point of care testing - which provided instant results, to confirmatory tests, which provided more comprehensive information about specific substances in the body.

4. Insurance companies provided benefits to individuals enrolled for coverage under individual and employer-sponsored health insurance plans. These plans typically included coverage for UDTs performed to detect drug and alcohol use.

5. Chestatee Regional Hospital (Chestatee) was located in a rural community in Dahlonega, Georgia. Person A, through Person A's controlling interest in a limited liability company, acquired Chestatee in or about August 2016 for approximately $15,000,000.

6. Chestatee had contracts with insurance companies under which the insurance companies agreed to reimburse Chestatee for providing various health care services, including UDTs, for inpatients and outpatients of the hospital.

7. Beaches Recovery Services, LLC ("Beaches Recovery"), a drug rehabilitation facility located at 1909 Beach Boulevard, in Jacksonville, Florida, was a Florida limited liability company organized on or about August 12, 2014.

8. North Florida Labs, LLC ("North Florida Labs") was a Florida limited liability company organized on or about August 20, 2015.

9. KTL Labs, LLC ("KTL Labs") was a Florida limited liability company organized on or about October 22, 2015.

10. MARCOTTE was an operator of Beaches Recovery, a manager of North Florida Labs, and the sole owner of KTL Labs.

11. MARCOTTE established and exercised control over bank accounts at JP Morgan Chase for North Florida Labs and KTL Labs.

## THE AGREEMENT

12. From in or about early September 2016, through in or about August 2018, in the Middle District of Florida, and elsewhere, the defendant,

KYLE MARCOTTE,

did knowingly combine, conspire, confederate and agree with others, known and unknown to the United States Attorney, to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Sections 1347 and 2, and wire fraud in violation of Title 18, United States Code, Sections 1343 and 2, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## MANNER AND MEANS

13. The manner and means by which the defendant and his coconspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a. It was part of the conspiracy that MARCOTTE and Person A would and did agree that MARCOTTE would send urine specimens from patients at Beaches Recovery to Laboratory A so that Laboratory A would conduct UDTs.

b. It was further part of the conspiracy that MARCOTTE and Person A would and did agree that Person A would pay MARCOTTE approximately 40% of the insurance reimbursements that Laboratory A received for conducting UDTs on urine specimens for Beaches Recovery patients.

c. It was further part of the conspiracy that MARCOTTE and Person A would and did agree that MARCOTTE would broker agreements between Person A and substance abuse treatment facilities, sober living homes, and other sources of urine specimens (collectively, the "treatment facilities") to have the treatment facilities' urine specimens sent to Laboratory A so that Laboratory A would conduct UDTs.

d. It was further part of the conspiracy that, as part of their agreement regarding the treatment facilities, MARCOTTE would and did receive approximately 10% of the insurance reimbursements and the treatment facilities received approximately 30% of the insurance reimbursements that Laboratory A received for conducting UDTs on urine specimens provided by the treatment facilities.

e. It was further part of the conspiracy that MARCOTTE and others would and did open and control bank accounts in the names of various companies at various federally insured financial institutions in the Middle District of Florida and elsewhere, including, but not limited to, BB&T Bank and JPMorgan Chase Bank.

f. It was further part of the conspiracy that Person A would and did cause the submission, by wire transmission in interstate commerce and other means, of materially false and fraudulent claims for payment to insurance companies for UDTs conducted on both urine specimens from patients at Beaches Recovery, and the treatment facilities which MARCOTTE brokered agreements with Person A. Such claims were materially false and fraudulent in that they falsely claimed that Chestatee and other hospitals conducted the UDTs, when, in fact, the UDTs were conducted primarily at Laboratory A for individuals who were not inpatients or outpatients of Chestatee or the other hospitals.

g. It was further part of the conspiracy that Person A would and did cause insurance reimbursements received by Chestatee and other hospitals in connection with these false claims to be deposited into Laboratory A's bank account at BB&T Bank and to other bank accounts controlled by Person A, in order to promote and carry on the fraudulent scheme.

  h. It was further part of the conspiracy that Person A would and did transfer these fraudulently obtained funds from Laboratory A's bank accounts to North Florida Labs and KTL Labs' bank accounts in the Jacksonville, Florida area at JP Morgan Chase, in order to promote and carry on the fraudulent scheme.

  i. It was further part of the conspiracy that MARCOTTE would and did establish an account at Automatic Data Processing ("ADP") to handle the transfer of certain insurance reimbursements received from Person A to treatment facilities to which MARCOTTE had brokered agreements with Person A, in order to promote and carry on the fraudulent scheme.

  j. It was further part of the conspiracy that MARCOTTE would and did cause certain insurance reimbursements that were received from Person A and deposited into KTL Labs' bank accounts to be transferred from said accounts, through ADP, to various individuals and companies who controlled the treatment facilities, in order to promote and carry on the fraudulent scheme.

  k. It was further part of the conspiracy that MARCOTTE would and did cause certain insurance reimbursements that were received from Person A and deposited into KTL Labs' bank accounts to be transferred from said accounts to MARCOTTE's personal bank accounts at JP Morgan Chase, in order to promote and carry on the fraudulent scheme.

l.  It was further part of the conspiracy that conspirators would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

1. The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

2. Upon conviction of a violation of Title 18, United States Code, Section 1956(h), the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

3. The property to be forfeited includes, but is not limited to, the following:

    a.    the sum of at least $10,220,281.42 which represents the amount of proceeds obtained as a result of the violations charged in Count One.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), including, but not limited to, the following:

    a.    Real property including all improvements thereon and appurtenances thereto, located at 315 12th Street, Atlantic Beach, FL 32233, more particularly described as:

              A Portion of Lot 25, Block 1, as shown on map of Selva Marina Unit No. 1, as recorded in Plat Book 23, Page 4, of the current public records of Duval County, Florid and being ore particularly described as follows:

              For a point of beginning, commence at the Southeasterly corner of said Lot 25, said point being situate in the curved Northerly right of way line of 12th Street (A 60 foot right of way as now established), said curved Northerly right of way line being concave Northwesterly leading Southwesterly and having a radius of 924.92 feet; from the point of beginning thus described; thence Southwesterly along and around said curved right of way line, an arc distance of 75.02 feet; said arc being subtended by a chord bearing and distance of South 78 degrees 19' 41" West 75.00 feet; thence North 06 degrees 15' 23" West, departing said curved right of way line, a distance of 35.05 feet; thence North 01 degrees 08' 54" West, a distance of 107.40 feet; to a point situate on the line dividing said Lot 25 and Lot 26, Block 1 of said Selva Marina Unit No. 1; thence North 83 degrees 42' 00" East, along

said diving line, a distance of 65.00 feet to a point on the line dividing said Lot 25 and Lot 24, Block 1 of said Selva Marina Unit No. 1, said point also being the Northeasterly corner of said Lot 25; thence South 06 degrees 18' 00" East, along last said dividing line, a distance of 135.00 feet to a point situate in said curved Northerly right of way lie of 12th Street and the Point of Beginning.

Assessor's Parcel No: 171910-0015.

MARIA CHAPA LOPEZ
United States Attorney
Middle District of Florida

By: _____
Tysen Duva
Assistant United States Attorney

By: _____
Frank Talbot
Assistant United States Attorney
Chief, Jacksonville Division

ROBERT ZINK
Acting Chief
Criminal Division, Fraud Section

By: _____
Joseph S. Beemsterboer
Deputy Chief
Criminal Division, Fraud Section

Gary A. Winters
James V. Hayes
Trial Attorneys
Criminal Division, Fraud Section